```
RECEIPT #_____5200 1
AMOUNT $_____150
SUMMONS ISSUED___1
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE___11-24-03____
```

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Patrick Coppola, | Civil Action No: |
| **PLAINTIFF** | 03 12363 WGY |
| V. | **PLAINTIFFS VERIFIED COMPLAINT AND JURY DEMAND** |
| BCI Eclipse LLC, Brentwood Communications | MAGISTRATE JUDGE |
| **DEFENDANT** | |

## SUMMARY STATEMENT

1. Plaintiff, Patrick Coppola, by his attorney Michael C. Leccese of the Law Offices of Michael Leccese, P.C., commences this action against the Defendant BCI Eclipse, LLC, Brentwood Communications Inc., under the copyright laws of the United States 17 U.S.C. § 101 et. Seq. for copyright infringement under copyright laws of United States title 17 chapter 5.

2. Stated most succinctly, Plaintiff at all relevant times have been, the sole copyright owners of exclusive rights under United States copyright with respect to certain copyrighted screen plays and movie recordings (Recordings), each of which is the subject of a valid Certificate or Copyright Registration issued by the Register of Copyrights; Dated Jan. 23 1995 for motion picture Where Angles Dance; Jan. 26 1999 for motion picture Seaside Seduction.

3. Plaintiff started negotiations with Defendant that would allow Defendant to copy, distribute and sell the Plaintiffs movies, however no mutually acceptable

1

agreement was achieved and no contract was executed. Unbeknownst to Plaintiff Defendant went forward with the copy, distribution and sales of the movies. Plaintiff became aware of Defendants misdoings only after an unrelated third party movie critic phoned Plaintiff to ask him about the movie. Plaintiff at that time learned that the movies where being fraudulently copied, distributed and sold by Defendant. Plaintiff attempted many times to settle with Defendant with no success. To the best of the Plaintiffs knowledge the Defendant continues to copy, distribute and sell Plaintiffs copyrights. Plaintiff asserts cause of action under Title 17 copyright infringement laws of the United States.

## THE PARTIES

4. Plaintiff, Mr. Patrick Coppola d.b.a. Coppola Entertainment, 26 Lincoln St. Stoneham, MA 02180

5. On Information and belief the Defendants: BCI Eclipse LLC, Brentwood Communication Inc. 810 Lawrence Dr., Suite 100, Newbury Park, California 91320. As used herein, the term Defendant shall also specifically include all applicable agents, servants, employees and representatives of BCI Eclipse, Brentwood Communications as designated in this Complaint.

## NATURE OF THE CASE

6. This is an action arising under the copyright laws of the United States 17 U.S.C. § 101 et. Seq. and copyright infringement under copyright laws of United States 17 U.S.C. § 501 et. Seq.

## JURISDICTION AND VENUE

7. This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States 17 U.S.C. § 101 et. Seq.

8. This Court has jurisdiction under 17 U.S.C. § 101 et.; 28 U.S.C. § 1331 federal jurisdiction ; and 28 U.S.C. § 1338 copyright

9. This Court has personal jurisdiction over the Plaintiff and venue in this District is proper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a), in that the defendant does business in this district and acts of infringement complained of herein occurred in this district.

## FACTS COMMON TO ALL COUNTS

10. On January 29, 2001 Mr. Coppola spoke with Mr. Greg Glass and Ed Goetz of BCI, Eclipse (BCI) relative to setting up a sales and marketing program for his two movies; Seaside Seduction and Where Angels Dance.

11. January 30, 2001 Mr. Coppola mailed two VHS (Tape) copies of two films along with a cover letter referencing their previous conversations to BCI for review.

12. February 16, 2001 Mr. Coppola received (via e-mail) a draft Licensing agreement (Contract) from Mr. Howard M. Zelener, Esq. (BCI's Attorney) at the request of Mr. Goetz. Mr. Coppola began Contract Negations several times by phone with Mr. Zelener. Mr. Coppola faxed (several times) marked up versions of the contract for proposal to BCI. Contract negotiations continued by phone on March

12th, 22, and 29th, then into April on the 2nd, 4th, 9th, 12th, 16th, and 20th. A conference call was held with Mr. Coppola, Mr. Zelener and Mr. Goetz on April 26th. A new Contract was sent to Mr. Coppola from BCI with some of the negotiated provisions present, no agreement was reached.

13. As contract negotiations continued in May, BCI requested that Mr. Coppola send BCI the masters of the movies as well as any artwork he may have, BCI requested this in order to better review the quality of the films and to determine weather they could transfer the masters to DVD format. Mr. Coppola sent the masters with artwork to BCI for review in an effort to further contract negotiations.

14. In June of 2001 (June 1 and June 6), Mr. Coppola spoke and negotiated with Mr. Goetz further, however contract negotiations broke down and no agreement was made. At this point BCI and Mr. Coppola could not come to a mutually acceptable agreement, no further communications or negotiations was planned at this time.

15. Later that year (2001) Mr. Coppola was contacted by a third party who told Mr. Coppola that he was reviewing the films (Where Angels Dance and Seaside Seduction) and he enjoyed the films very much. This third party also mentioned at that time that the DVD (Digital Video Disc) he received was of poor copy quality. Mr. Coppola expressed surprise and concern to the third party that the films had not yet been released and he should not have been given access to the movies.

16. Mr. Coppola attempted to retain counsel but was unsuccessful.

17. In December 2001 Mr. Coppola phoned BCI and spoke to Mr. Goetz questioning him about the release of his films. Mr. Goetz told Mr. Coppola that BCI had not

sold many of his films. Mr. Coppola spoke with Mr. Michael Dowd (C.F.O. BCI) asking about any sales information; Mr. Dowd provided no information as this time.

18. Winter and Spring of 2002, Mr. Coppola attempted several times to contact Mr. Ed Goetz and Mr. Greg Glass. Mr. Coppola left several messages with no reply from anyone at BCI.

19. January 2002 Mr. Coppola employed the services of an Attorney in Los Angeles California, Atty. Glen Lerman, who contacted Mr. Goetz and Mr. Zelener several times, Mr. Zelener communicated to Mr. Lerman that he wanted Mr. Coppola to sign an agreement releasing BCI from any liability on distribution of the films. Mr. Coppola would not agree to a mutual release of all claims known and unknown. At this time BCI refused to return the masters.

20. In October of 2002 Mr. Coppola e-mailed BCI (Jeff Hayne) requesting immediate return of his films (and masters) and that he that he suspects that the films are being distributed by BCI without his authorization. Mr. Hayne commented that he would do his best.

21. November 25, 2002 Mr. Goetz informed (via e-mail) Mr. Coppola that BCI has packaged his films with others, one film (Seaside Seduction) within a 4 pack named Deadly Sins which BCI has 2,877 copies and the second film (Where Angels Dance) packaged in a 10 pack which BCI has 1,260 units named No One Lives Forever. Mr. Goetz also informs Mr. Coppola that BCI has 295 single copies of Seaside Seduction and 644 single copies of Where Angles Dance all in DVD format (total 5,076). Mr. Goetz requests that he be authorized to sell the

packaged sets and that he will return the single copies. Mr. Goetz requests that Mr. Coppola agree to this. BCI requests a brief letter of agreement be sent Mr. Coppola.

22. Later on November 25th Mr. Mr. Coppola communicated (via e-mail to Mr. Goetz and Mr.Hayne) to BCI to stop all shipment of his films immediately and completely, Mr. Coppola made clear that BCI has no authorization to distribute, copy, ship or sell any of his films, that BCI never had authorization to copy, ship, distribute or sell either of film.

23. January 16, 2003 Mr. Coppola received Beta masters from BCI, however BCI Still possesses the DVD masters.

24. In September 2003 Mr. Coppola employed the services of Attorney Michael Leccese (Attorney for Plaintiff) in Massachusetts, A letter was sent to Mr. Zelener Attorney to BCI outlining Mr. Coppola's position.

25. Mr. Zelener contacted Attorney for Plaintiff and told him that all sales and advertising of the films would be stopped immediately. He also said that all copies (and masters) of the films would be either destroyed or that Mr. Coppola could purchase all remaining copies from BCI.

26. Recordings are continuing to be copied, distributed and sold without the copyrights owners' permission. Sales receipt with order date of Oct 17, 2003 Exhibit B, demonstrates conclusively that the recordings are being sold.

## **CAUSE OF ACTION**

27. Plaintiff incorporates by reference all allegations set forth in Paragraphs one (1) through twenty-four (24).

28. Plaintiffs are, and at all relevant times have been, the sole copyright owners or licensees of exclusive rights under United States copyright with respect to certain copyrighted screen plays and movies recordings (Recordings), including but not limited to the copyrighted movie recordings identified in Exhibit A attached hereto, each of which is the subject of a valid Certificate or Copyright Registration issued by the Register of Copyrights; Dated Jan. 23 1995 for motion picture Where Angles Dance; Jan. 26 1999 for motion picture Seaside Seduction.

29. Among the exclusive rights granted to each Plaintiff under Copyright Act are the exclusive rights to reproduce the Copyrighted Recordings and to distribute the Copyrighted Recordings to the public 17 U.S.C § 106.

30. Plaintiffs are informed and believe Defendant, without permission or consent of Plaintiffs, has used, and continued to use (but not limited to) an online media distribution system to distributed the Copyrighted Recordings (DVD's) to the public, and has made available for distribution to others. In doing so, Defendant's actions has violated Plaintiffs' exclusive right of reproduction and distribution. Defendant's actions constitute infringement of Plaintiffs' copyrights and exclusive rights under copyright law 17 U.S.C. § 501.

31. Plaintiff are informed and believe that the forgoing acts of infringement have been willful and intention, in disregard of and with indifference to the rights of the Plaintiff.

7

32. As a result of Defendant's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. §504 (c) for Defendant's infringement of each of the copyrighted reordering. Plaintiffs further are entitled to their attorney's fees and costs pursuant to 17 U.S.C. § 505.

33. The conduct of the Defendant is causing and, unless enjoined and restrained by this court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measure in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiffs are entitled to injunctive relief prohibiting Defendant from further infringing Plaintiffs' copyrights, and ordering Defendant to destroy all copies of recordings made in violation of Plaintiffs exclusive rights or turn over recording to Plaintiff.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable in this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff claims damages and prays that judgment be entered in his favor and against Defendant and that Plaintiff be granted the following relief:

A. For statutory damages for each infringement of each copyrighted recording pursuant to 17 U.S.C. § 504;

B. for Plaintiffs costs in this action;

C. for plaintiff reasonable attorneys' fees incurred herein 17 U.S.C.§ 505;

D. an award of pre-judgment, judgment and post-judgment interest as allowed by law;

E. for an injunction providing:

"Defendant shall be and hereby enjoined from directly or indirectly infringing Plaintiffs rights under federal or state law in the Copyrighted Recordings and, whether now in existence or later created, that is owned or controlled by plaintiff (or any party, subsidiary, or affiliated of Plaintiffs), including without limitation by using the Internet or any online media distribution system to reproduce and of Plaintiffs recordings, to distributes any of Plaintiffs recordings, or to make and of Plaintiffs recordings available for distribution to the public, except pursuant to a lawful license or with the express written authority of Plaintiff. Defendant also shall destroy or turn over all masters and copies of Plaintiffs Recordings that Defendant has in any physical medium or device in Defendant possession custody or control, and demonstrate to Plaintiff in writing that all masters and copies have been destroyed or turned over; and

F. for other such and further relief as the Court may deem fair, just and proper.

## LIST OF EXHIBITS

1. Exhibit A- copyright Certificates of Registrations
2. Exhibit B- Sales receipt

## VERIFICATION

I, Patrick Coppola Plaintiff in the above-captioned action, do hereby depose and state under oath that I have read this complaint, and I do hereby certify that each and every allegation contained herein is true and accurate and based upon my own personal knowledge, information and belief. To the extent this verification is based upon information and belief, I belief to be true and accurate.

Signed and sealed under the pains and penalties or perjury.

_____    Dated: 11/20/03
Patrick Coppola

Respectfully submitted by Plaintiff's Attorney:

_____    Dated: 11/20/03
Michael Leccese, Esq. BBO # 650521
Law Offices of Michael Leccese, P.C.
790 Turnpike St. suite 202
North Andover, MA 01845
978-686-4420
978-686-6710 (fax)
mleccese@ip-lawoffices.com

10